WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sabina Carol Francois,<br><br>Plaintiff,<br><br>v.<br><br>United States of America, et al.,<br><br>Defendants. | No. CV-16-02936-PHX-BSB<br><br>**ORDER** |

On August 31, 2016, Plaintiff filed a Complaint asserting several claims based on events during immigration-related proceedings. (Doc. 1.) Plaintiff asserts a negligence claim under the Federal Tort Claims Act (FTCA) (Count One), and three claims under the Mandamus Act (Counts Two, Three, and Four). (Doc. 1 at 6-8.) Defendants, United States of America, Jeh Johnson, Secretary of Homeland Security, Leon Rodriguez, Director, U.S. Citizenship and Immigration Services (USCIS), and John Ramirez, Field Office Director, USCIS, Phoenix, Arizona, have filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 12.) After Defendants filed their motion, they substituted John F. Kelly for Jeh Johnson and Lori Scialabba for Leon Rodriguez. (Doc. 14 at 1 n.1 and n.2.) The motion to dismiss is fully briefed. (Docs. 12, 13, 14.) As set forth below, the Court grants the motion.

**I.    Procedural History**

On September 26, 2013, Plaintiff filed an action in the District Court for the

District of Arizona.[1]  *Francois v. Johnson*, et al., No. CV- 13-01964-PHX-PGR) (the First Action).  That complaint raised six causes of action alleging claims under the Administrative Procedure Act (APA), 5 U.S.C. § 706, the Declaratory Relief Act, 28 U.S.C. § 2201, and the Mandamus Act, 28 U.S.C. § 1361.  (First Action, Doc. 1.)  Specifically, Plaintiff alleged that she was entitled to relief because USCIS unlawfully revoked her first husband's I-130 petition and unlawfully denied Plaintiff's I-485 applications for adjustment of status.  (*Id.*)  Plaintiff sought an order compelling USCIS to register her status as a lawful permanent resident.  (*Id.*)  The Court dismissed the First Action on April 21, 2014 for lack of jurisdiction and failure to state a claim.  (First Action, Doc. 29 at 12-13.)  Plaintiff appealed the District Court's decision to the Ninth Circuit Court of Appeals.  (First Action, Doc. 37.)  On June 29, 2016, the Ninth Circuit affirmed the District Court's dismissal on jurisdictional grounds.  (First Action, Doc. 39.)

On September 6, 2016, Plaintiff filed the current action, which challenges the same government actions and seeks the same relief as the First Action, but alleges a negligence action under the FTCA, 28 U.S.C. §§ 1346(b), 2671-80, in place of the previously dismissed APA and declaratory relief claims.  (*Compare* Doc. 1 *with* First Action, Doc. 1.)

**II.     Background**

Plaintiff is a native and citizen of Trinidad and Tobago.  (Doc. 1 at ¶ 10.)  Plaintiff alleges that she lawfully entered the United States on August 12, 1983 as a B-2 nonimmigrant visitor.  (*Id.* at ¶ 11.)  In February 1992, Plaintiff married a United States citizen, Randolph Barclay. (*Id.* at ¶ 12.)  In March 1993, Barclay filed a spousal visa petition (Form I-130) with the Immigration and Naturalization Service (INS).[2]  (First

---

[1] A court may take judicial notice of documents outside of the complaint that are "matters of public record" as long as the facts noticed are not "subject to reasonable dispute."  *See* Fed. R. Evid. 201.  In particular, a court may take judicial notice of pleadings, memoranda, and other verifiable documents from earlier related litigation. *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

[2] Defendants and the Court refer to the INS because some of the relevant events occurred before INS dissolved on March 1, 2003.  (Doc. 12 at 3 n.2.)

Action, Doc. 1 at ¶ 14.)  At the same time, Plaintiff filed an application to adjust her status to that of a lawful permanent resident (Form I-485) based on her marriage to Barclay.  (Doc. 1 at ¶ 13.)  When Plaintiff submitted her I-485 application for adjustment in March 1993, she was scheduled for an adjustment interview in June 1993.  (*Id.* at ¶ 14.)  In preparation for the June 1993 interview, INS prepared an approval notice bearing the stamped signature of the former District Director of INS's Phoenix office, Ruth Anne Meyers, which stated that Plaintiff's I-485 application was granted.  (*Id.* at ¶ 19.)  However, Plaintiff could not produce either her passport or Form I-94 evidencing her alleged August 12, 1983 entry because she claimed both documents were lost in October 1992.  (*Id.* at ¶ 15.)  Instead of the entry documents, Plaintiff attempted to establish that she had lawfully entered the United States on August 12, 1983, by submitting two affidavits — one from Plaintiff and one from another individual.  (*Id*. at ¶¶ 16, 17.)  INS determined that the affidavits were insufficient to prove Plaintiff's lawful entry.  (*Id*. at ¶ 18.)  INS advised Plaintiff that she should withdraw her Form I-485 and pursue lawful permanent resident status through consular processing.  (*Id.*)  On July 23, 1993, Plaintiff withdrew her Form I-485.  (*Id.* at ¶ 21.)

In July 1994, Barclay filed a second I-130, which INS approved in August 1994.  (*Id.* at ¶ 28.)  Plaintiff alleges that she and Barclay appeared for their interview at INS in December 1994.  (*Id.* at ¶ 29.)  However, in the First Action, Plaintiff alleged that the interview took place in May 1995.  (First Action, Doc. 1 at ¶ 27.)  In December 1994, Plaintiff filed a second I-485 application.  (*Id.* at ¶ 26.)  In January 2001, INS determined that Plaintiff's marriage to Barclay was not bona fide and revoked the Form I-130.  (Doc. 1 at ¶ 30.)  On July 16, 2001, INS denied Plaintiff's second I-485 application.  (First Action, Doc. 1 at ¶ 33.)  Plaintiff and Barclay later divorced.  (Doc. 1 at ¶ 31.)

In October 2006, Plaintiff filed a third Form I-485 based upon her marriage to United States citizen, James Voice.  (*Id.* at ¶ 33.)  Plaintiff alleges that on February 13, 2007, USCIS approved Plaintiff's Form I-485, but failed to attach her permanent resident card to the I-797 form.  (*Id.* at ¶ 35.)  In the First Action, Plaintiff alleged that USCIS

denied her third I-485 on July 6, 2007.  (*Compare* First Action Doc. 1 at ¶ 40 *with* Doc. 1 at ¶ 34.)  In support of their motion to dismiss, Defendants submitted evidence that on July 6, 2007, Plaintiff was notified that her third I-485 had been denied.  (Doc. 12, Ex. B (Decision on Adjustment of Status to Permanent Resident).)

In July 2007, Plaintiff was placed in removal proceedings on the ground that she had overstayed her nonimmigrant visitor visa.  (Doc. 1 at ¶ 36.)  In February 2008, Plaintiff requested that USCIS provide her with evidence of her lawful permanent resident status, but USCIS employees refused to issue her a permanent resident card.  (*Id.* at ¶ 39; Doc. 12, Ex. C.)  Plaintiff alleges that in July 2009, she filed an Application for Naturalization (Form N-400), but USCIS refused to adjudicate the Form N-400 because Plaintiff could not produce a copy of her permanent resident card.  (*Id.* at ¶ 40.)  Plaintiff alleges that in June 2013, employees of USCIS and ICE acknowledged that the two affidavits Plaintiff submitted in 1993 evidenced her lawful entry into the United States on August 12, 1983.  (*Id.* at ¶ 41.)  Plaintiff alleges that her removal proceedings were administratively closed in October 2015.  (*Id.* at ¶ 42.)  However, on August 30, 2016, the Immigration Judge reopened Plaintiff's removal proceedings at her request.  (Doc. 12, Ex. D.)

**III.   Standards for Motions to Dismiss Under Rules 12(b)(1) and 12(b)(6)**

Rule 12(b)(1) "allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction."  *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).  The court should address arguments raised under Rule 12(b)(1) before addressing other arguments for dismissal because if the complaint is dismissed for lack of subject matter jurisdiction, other defenses become moot.  *Kinlichee v. United States*, 929 F. Supp. 2d 951, 954 (D. Ariz. 2013) (citing Wright and Miller, Federal Practice and Procedure: Civil 2d § 1350, 209-10 (1990)).  Furthermore, "[t]he party asserting jurisdiction has the burden of proving all jurisdictional facts."  *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).  The court presumes lack of

jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

In determining whether it has subject matter jurisdiction, a court is not limited to the allegations in the complaint. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Rather, the court may look beyond the complaint to extrinsic evidence, without converting the motion to dismiss to a motion for summary judgment, and it need not assume the truth of the complaint's allegations. *Id.* "With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction." *Autery v. United States,* 424 F.3d 944, 956 (9th Cir. 2005.) However, when the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard for summary judgment. *Id.*

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. When a claim is challenged under this rule, the court construes the complaint liberally in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). The court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the plaintiff's favor, and views the complaint in the light most favorable to the plaintiff. *Id.* at 555. Although "detailed factual allegations" are not necessary to meet this pleading requirement, the plaintiff must, at a minimum, set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

**IV.   Plaintiff's Claims**

    **A.   Negligence Claims under the FTCA**

Defendants move to dismiss Plaintiff's negligence claim asserted in Count One for lack of jurisdiction pursuant to Rule 12(b)(1). (Doc. 12 at 6.) Plaintiff alleges jurisdiction pursuant to the FTCA. (Doc. 1 at ¶ 7.) The United States can be sued only to

- 5 -

the extent that it has waived its sovereign immunity. *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, "provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).

### 1.     Private Party Analog

The government accepts liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 ("The United States shall be liable . . . relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . . ."); *United States v. Olson*, 546 U.S 43, 46 (2005) (the FTCA waives the federal government's sovereign immunity where local law would make private person liable in tort, even when uniquely governmental functions are at issue).

Thus, to establish jurisdiction under the FTCA, Plaintiff must show that the government's actions, if committed by a private party, would constitute a tort in Arizona. *Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995); *see also Lomando v. United States*, 667 F.3d 363, 373 (3d Cir. 2011) ("[T]he United States is liable only to the extent that in the same circumstances the applicable local law would hold 'a private person' responsible."); *Chen v. United States*, 854 F.2d. 622, 626 (2d Cir. 1988) ("Thus, for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred."). "The breach of a duty created by federal law is not, by itself, actionable under the FTCA." *Love*, 60 F.3d at 644 (citing *Baker v. United States*, 817 F.2d 560, 566 & n. 6 (9th Cir. 1987)).

In Count One, Plaintiff asserts a cause of action for negligence against Defendants pursuant to the FTCA. Specifically, Plaintiff alleges that INS or USCIS employees: (1) negligently failed to accept the 1993 affidavits as evidence of her lawful admission in 1983 (Doc. 1 at ¶ 47); (2) negligently handled and processed Plaintiff's immigration case (*Id.* at ¶ 48); (3) negligently instituted and maintained removal proceedings against her (*Id.* at ¶ 49); (4) negligently maintained removal proceedings after acknowledging that the 1993 affidavits evidenced her lawful entry (*Id.* at ¶ 50); and (5) were negligent per se. (*Id.* at 51.) In their motion to dismiss, Defendants argue that there is no private party analog under Arizona law that is comparable to USCIS's obligation to process applications for immigration benefits or to initiate removal proceedings, and that Plaintiff did not identify the statute or regulation upon which her negligence per se claim is based. (Doc. 12 at 8.)

In her response to the motion to dismiss, Plaintiff does not discuss her separate allegations of negligence but appears to clarify that Count One is a single claim for "negligent delay" in processing her March 1993 application for permanent resident status. (Doc. 13 at 3.) She argues that there is a private party analog for her claim because the government's obligation to process applications for immigration benefits is similar to Arizona's tort for "negligent delay." (Doc. 13 at 2.) To support her argument, Plaintiff cites *Life & Accident Ins. Co. v. Songer*, 603 P.2d 921 (Ariz. Ct. App. 1979), *Shortman v. Roubideaux*, 2015 WL 241863 (D. Ariz. Jan. 20. 2015), and Ariz. Rev. Stat. § 20-3153. (*Id.*) As set forth below, the Court finds that these cases do not support Plaintiff's argument or establish the government's liability under the Arizona statute.

### a. "Negligent Delay"

In *Songer*, the Arizona Court of Appeals recognized a claim that insurance companies could be liable under a theory of "negligent delay." *Songer,* 603 P.2d at 929. The court held that an insurance company that accepts an application and premium payment for insurance must act within a reasonable time to either accept or reject the application and may be liable in tort for damages caused by unreasonable delay. *Id.* at

929-30.  In finding a duty to timely process insurance applications, the Arizona Court of Appeals considered the duty of fair dealing imposed on insurance companies, the acceptance of premium payments, the regulatory scheme applicable to insurance companies because they are part of an industry affecting the public interest, and consumer protection principles.  *Id.*

In *Shortman*, the plaintiff asserted a negligence claim under the FTCA against the United States alleging that Indian Health Services (IHS) and Health and Human Services (HHS) negligently delayed in processing her application to IHS for medical and prescription coverage, resulting in the plaintiff incurring substantial out-of-pocket costs for prescription medications before IHS began paying for them.  *Shortman*, 2015 WL 241863, at *1-2.  The plaintiff asserted a claim for negligent delay based on the holding in *Songer*.  *Id.* at *4.  The government moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and argued that the plaintiff could not show that the government's actions, if committed by a private person, would constitute a tort in Arizona.  *Id.* at *3.

The district court found that, on the limited record presented, it could not resolve the factual disputes the parties had raised with respect to both the jurisdictional issues and the merits and, therefore, it applied the summary judgment standard to the motion to dismiss.  *Id*. at *3.  The court denied the motion and held that "on the basis of the preliminary record in this case, the Court cannot conclude that Plaintiff is unable to identify an Arizona law under which a private person would be liable for the conduct allegedly engaged in by Defendants." *Id.* at *5.  The court stated that it could "not conclude that the Arizona tort of negligent delay would be inapplicable to [IHS's] conduct if undertaken by a private person or entity in Arizona."  *Id.*

Applying the factors set out in *Songer,* the court stated that while "HIS is not an insurer in the traditional sense" its relationship with the plaintiff was "arguably analogous to that of an insurance company."  *Id.*  The court further found that IHS was a health care

1 provider affecting the public interest, and that the interest of consumer protection
2 suggested that IHS had a duty to avoid detrimental delay. *Id.*

3 As an initial matter, the Court finds that Plaintiff's claims are distinguishable from
4 the plaintiff's negligent delay claims in *Shortman*. Plaintiff alleges that in March 1993,
5 the government accepted Plaintiff's I-485 application for adjustment of status to lawful
6 permanent resident and the filing fees. (Doc. 1 at ¶ 13.) In her response to the motion to
7 dismiss Plaintiff alleges that government employees "refused to process" her I-485
8 application because it would not accept the affidavits Plaintiff provided as proof of legal
9 entry. (Doc. 13 at 3.)

10 Although Plaintiff seems to compare this conduct to delay in processing an
11 insurance application, the Complaint does not support a finding that the government
12 delayed in making a decision on the application. Rather, the Complaint indicates that the
13 government considered the affidavits Plaintiff submitted, found them inadequate to
14 support her lawful entry, and advised Plaintiff to withdraw her I-485 application and to
15 seek lawful permanent resident status through other avenues. (Doc. 1 at ¶¶ 16, 17, 18.)
16 On that advice, Plaintiff withdrew her I-485 application on July 23, 1993. (*Id.* at ¶ 21.)
17 Thus, Plaintiff's I-485 application that was submitted in March 1993 is distinguishable
18 from the situation in *Shortman*, where the plaintiff had to incur medical expenses because
19 the HIS did not make any decision on her application for benefits. Here, the government
20 had no application to decide and process because Plaintiff withdrew it.

21 In her response to the motion to dismiss, Plaintiff states that the "conduct
22 complained of is the government's failure to process her 1993 application after
23 acknowledging in June 2013 that she lawfully entered the United States." (Doc. 13 at 3.)
24 As previously noted, Plaintiff withdrew her I-485 application in July 1993. (Doc. 1 at
25 ¶ 21.) Before Plaintiff withdrew that application, the government considered that
26 application. (*See* Doc. 1 at ¶¶ 13-18 (alleging that the government accepted the
27 application, scheduled an adjustment interview, accepted additional evidence, advised
28 Plaintiff that the evidence was inadequate to establish her lawful entry, and directed her

to pursue consular processing).) Thus, Plaintiff's argument suggests that even after she withdrew her I-485 application in July 19993, the government was required to consider that application because twenty years later, in 2013, it allegedly acknowledged that Plaintiff had lawfully entered the United States. However, even assuming that in June 2013 the government made this acknowledgment, there was no I-485 application pending for the government to process after Plaintiff withdrew it.

Furthermore, the Court finds that the Arizona tort of negligent delay is not sufficiently analogous to the adjudication of immigration and citizenship benefits alleged in this case to provide a basis for the waiver of the government's sovereign immunity.[3] The government's alleged conduct in this matter is not analogous to the conduct of insurers addressed in *Songer* or to the government's conduct in *Shortman*. The government in this case did not have a relationship with Plaintiff that was "arguably analogous to that of an insurance company." *See Shortman*, 2015 WL 241863, at *5. The government was not providing health care or other benefits similar to those provided by an insurance company, and there are no considerations of consumer protection in the context of immigration proceedings. *See id.*

### b.     State Statutory Cause of Action

Plaintiff also argues that Ariz. Rev. Stat. § 20-2153 provides a basis for the government's liability. In *Shortman* the court rejected the plaintiff's argument that Ariz. Rev. Stat § 20-2153, or any statutorily-created cause of action, could serve as a basis for an FTCA claim. *Id.* at *5. The court explained that the FTCA waives sovereign immunity for certain tort actions, and that the plaintiff had not cited any authority for the

---

[3] Courts in other jurisdictions have rejected similar challenges under the FTCA to the government's denial of immigration applications. *See Omoniyi v. Dep't of Homeland Sec.*, 2012 WL 892197, at *9 (S.D.N.Y. Mar. 13, 2012) (dismissing tort claim for loss of wages and loss of prospective employment opportunities due to USCIS's error in denying naturalization application and holding that misconduct alleged by plaintiff against USCIS regarding the handling of plaintiff's naturalization application had no private analog and thus could not be redressed under the FTCA); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (noting, but not reaching, the government's position that, in matters relating to the naturalization of aliens, "only the United States has the power to act," and, "[a]ccordingly, . . . there is no private analog under state law").

proposition that the FTCA applies to state statutory causes of action. *Id.* Plaintiff makes the same argument, under the same state statute, that was rejected in *Shortman*, without citing any authority for the proposition that the FTCA applies to statutory causes of action. (Doc. 13 at 3.) Based on *Shortman*, the Court concludes that Ariz. Rev. Stat. § 20-2153 does not provide a basis for liability under the FTCA.

The Court concludes that because Plaintiff has not identified any Arizona law under which a private person would be liable for the conduct allegedly engaged in by Defendants in this case, her claim of negligence under the FTCA should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). Therefore, the Court does not reach the government's alternative argument that Plaintiff's claim for negligent delay should be dismissed because that negligence claim is untimely under the FTCA. (Doc. 12 at 9.)

**B.    Mandamus Claims**

In Counts Two, Three, and Four, Plaintiff alleges claims under the Mandamus Act, 28 U.S.C. § 1361. (Doc. 1 at ¶¶ 56-65.) Plaintiff alleges that the government violated its duty "to record her lawful admission for permanent residence" (Count Two), "to issue evidence of alien registration to lawful permanent residents" (Count Three), and "to adjudicate naturalizations applications within a reasonable period of time" (Count Four). (*Id.*) These counts are the similar to claims Plaintiff raised in the First Action. (*Compare* Doc. 1 at ¶¶ 56-65 *with* First Action Doc. 1 at ¶¶ 66-75.) The Court dismissed those claims for lack of jurisdiction. *See Francois v. Johnson*, No. CV-13-01964, 2014 WL 1613932, *4-5 (D. Ariz. Apr. 22, 2014) *aff'd* 2016 WL 3545707, at *1 (9th Cir. June 29, 2016). Aside from the Mandamus Act, Plaintiff does not allege any grounds for jurisdiction to support Counts Two, Three, and Four. (Docs. 1 and 13.) Therefore, the prior decision is instructive.

In the pending motion, Defendants moves to dismiss Counts Two, Three, and Four for lack of jurisdiction and for failure to state a claim. (Doc. 12 at 10-13.) Plaintiff did not respond to these arguments in her response to the motion to dismiss. (Doc. 13.)

- 11 -

Under LRCiv 7.2(i), the Court may treat Plaintiff's failure to respond as a waiver of that issue and consent to Defendants' argument. *See Doe v. Dickenson*, 2008 WL 4933964 at *5 (D. Ariz. Nov. 14, 2008). Additionally, as set forth below, Defendants' arguments are well taken and support their motion to dismiss Counts Two, Three, and Four for failure to state a claim under Rule 12(b)(6).

### 1. Counts Two and Three

"Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997) (citing *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir. 1986)). As set forth below, Plaintiff does not satisfy the standard for the mandamus relief.

In Counts Two and Three, Plaintiff seeks an order compelling USCIS to (1) record her status as a lawful permanent resident under 8 U.S.C. § 1255(b), and (2) issue her evidence of alien registration as a lawful permanent resident. (Doc. 1 at ¶¶ 56-61.) However, USCIS is under no duty take either action unless and until Plaintiff either becomes a lawful permanent resident, or is judicially declared to be one, neither of which has occurred. In the absence of a duty there can be no claim for mandamus relief. *Patel*, 134 F.3d at 931.

In Count Two, Plaintiff contends that USCIS must "record [her] lawful admission for permanent residence" in accordance with 8 U.S.C. § 1255(b), and seeks an order compelling USCIS to "record [her] lawful admission for permanent residence." (Doc. 1 at ¶¶ 57, 68.) However, Section 1255(b) applies only "[u]pon the approval of an application for adjustment made under subsection (a) of this section . . . ." 8 U.S.C. § 1255(b). Therefore, USCIS does not have a duty to act unless and until it has approved an alien's adjustment application. *Id.* In her Complaint, Plaintiff acknowledges that she withdrew her first I-485 adjustment application in July 1993. (Doc. 1 at ¶ 21.) Plaintiff has acknowledged that USCIS denied her second adjustment application in 2001. (First

Action, Doc. 1 at ¶ 33). In the current Complaint, Plaintiff alleges that on February 13, 2007, USCIS approved Plaintiff's Form I-485, but failed to attach her permanent resident card to the I-797form. (*Id.* at ¶¶ 34, 35.) However, in the First Action, Plaintiff alleged that USCIS denied her third I-485 application on July 6, 2007. (First Action Doc. 1 at ¶ 40.) In support of their motion to dismiss, Defendants submitted evidence that on July 6, 2007, Plaintiff was notified that her third I-485 had been denied. (Doc. 12, Ex. B (Decision on Adjustment of Status to Permanent Resident).) Therefore, the Court determines that Plaintiff's third I-485 application was denied. Because USCIS denied all three of Plaintiff's I-485 adjustment applications, it is not obligated to record her lawful admission for permanent residence, and in the absence of a duty Plaintiff does not have a claim for mandamus relief. *Patel*, 134 F.3d at 931.

In Count Three, Plaintiff, citing 8 U.S.C. § 1304(d), alleges that "United States' employees have a duty to issue evidence of alien registration to lawful permanent residents." (Doc. 1 at ¶ 60.) Therefore, she seeks an order compelling the United States to issue evidence of alien registration. (*Id.* at ¶ 69.) Although Plaintiff correctly states the law on this issue, USCIS does not have a duty to issue Plaintiff evidence of alien registration as a lawful permanent resident in this case. As explained above, USCIS has not approved any of Plaintiff's adjustment of status applications. Additionally, on December 6, 2012, an Immigration Judge determined that Plaintiff is not a lawful permanent resident. (Doc. 12, Ex. E at 11.) Thus, there is no evidence of alien registration to issue to Plaintiff because she has not been determined to be a lawful permanent resident. (*See* Doc. 12, Ex. C.) USCIS has no duty to issue Plaintiff evidence of alien registration on the facts of this case, and in the absence of a duty there can be no claim for mandamus relief. *Patel*, 134 F.3d at 931.

Counts Two and Three also fail under the third prong in *Patel* because Plaintiff has other adequate remedies available. *Id*. Plaintiff may follow the appropriate procedures to challenge the Immigration Judge's determination that she is not a lawful permanent resident. Those procedures include appealing to the BIA and the Ninth

1. Circuit. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9); 8 C.F.R. § 1240.13. Because these remedies are available to Plaintiff, mandamus relief is unavailable. *See Patel*, 134 F.3d at 931. To the extent Plaintiff challenges the government's discretionary decision on her I-485 applications, this Court lacks jurisdiction to review such a claim. Pursuant to the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005), this Court lacks jurisdiction to review Petitioner's challenge to the denial of discretionary relief. 8 U.S.C. § 1252(a)(2)(B)(i) (denials of discretionary review).

### 2. Count Four

In Count Four, Plaintiff seeks an order directing USCIS to reverse its rejection of her N-400 application for naturalization and to adjudicate the application. (Doc. 1 at ¶¶ 62-65, 70.) Plaintiff asserts that "United States' employees wrongfully rejected Plaintiff's N-400 application for naturalization. . . [which] is a violation of their duty to adjudicate [the] application and to adjudicate the N-400 application within a reasonable amount of time." (*Id.* at ¶¶ 64, 65). This claim cannot survive a motion to dismiss because USCIS has no duty to adjudicate an application that is not pending before it. Plaintiff attempted to file her N-400 naturalization application on July 2, 2009. (Doc. 1 at ¶ 40.) However, USCIS rejected the application. (*Id*.) Therefore, there is no pending naturalization application for USCIS to adjudicate. USCIS has no duty to adjudicate an application that is not before the agency, and in the absence of a duty there can be no claim for mandamus relief. *Patel*, 134 F.3d at 931.

## V. Conclusion

As set forth above, this Court lacks jurisdiction over Plaintiff's negligence claims because those claims are not properly brought under the FTCA. Therefore, the Court dismisses Plaintiff's negligence claims under Rule 12(b)(1). Additionally, Plaintiff has not stated a claim for relief under the Mandamus Act. Therefore, the Court dismisses those claims under Rule 12(b)(6), and dismisses this action.

Accordingly,

1    **IT IS ORDERED** that Defendants' motion to dismiss (Doc. 12) is **GRANTED.**
2 This case is dismissed with prejudice and the Clerk of Court shall terminate this case.
3    Dated this 3rd day of February, 2017.

_Bridget S. Bade_
Bridget S. Bade
United States Magistrate Judge